LUCY E. CLOGSTON *vs.* RIZPAH S. MARTIN.

Suffolk. November 21, 1902. — January 8, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Evidence,* Testimony at former trial. *Landlord and Tenant. Deceit.*

The testimony of the plaintiff at a former trial is admissible only for the purpose of impeaching his testimony at the trial at which it is introduced.

If the agent of a landlord, to induce a tenant to take a lease of a house, states as a matter within his own knowledge that the plumbing with its sewer connections is all right, and the tenant relying on the statement takes the house and suffers illness and loss by reason of defects in the plumbing, the landlord is liable.

The actual condition of the plumbing and sewer connections of a house can be a matter of personal knowledge on the part of a landlord's agent so that his principal can be held liable for his false representations concerning such condition.

TORT against the owner of a house on Pembroke Street in Boston, leased by the plaintiff as a dwelling and boarding house, thereto induced by the alleged false and fraudulent representations of the defendant's agent, that the premises were habitable and in good condition and that the plumbing and sewer connections were perfect and all right, further alleging, that by reason of the defective condition of the plumbing and sewer connections the plaintiff was made ill and suffered loss and damage, with two other counts now immaterial. Writ dated October 21, 1898.

At the trial in the Superior Court *Sheldon, J.* refused to order a verdict for the defendant or to give the instructions requested by the defendant, and allowed the case to go to the jury on the first count, the substance of which is stated above. The jury returned a verdict for the plaintiff in the sum of $5,634.64; and the defendant alleged exceptions.

*A. Hemenway & A. E. Burr,* for the defendant.

*C. W. Bartlett & E. R. Anderson,* for the plaintiff.

HAMMOND, J. The evidence tended to show that Smith, the duly authorized agent of the defendant, stated to the plaintiff that the plumbing and its connections with the sewer were all right; but it is strenuously contended by the defendant that, even if such statements were made and were not true, there is nothing to show that Smith made them as of his own knowledge; or, to state the question with a little more precision, the defendant contends that in view of the nature of the subject matter of the statements alleged to have been made and the circumstances under which they were made, the evidence does not warrant a finding either that they were made by Smith as of his own knowledge or that the plaintiff was justified in thinking that he was speaking of his own knowledge.

Only three persons were present at the time of the conversation in which it is contended by the plaintiff that the statements were made, namely, the plaintiff, Mrs. Graves and Smith. As to the part of the conversation material to this inquiry, the plaintiff in her direct examination testified that she said to Smith, " 'I want you to tell me about the plumbing. I am very particular about that. I have been told to be very careful. I do not know anything about it myself, but I am very particular

about moving myself and my aged mother into a house where it is not all right. Now, do you know it is all right?' He says, ' Yes, I do. I am sure it is all right in every way, and the house in good order.'" And again, "' Now,' I said, ' if you will guarantee me that the plumbing is right, and the furnace is right, I will sign this lease.' He said, ' I know it is all right.'" And again : " He told me that the sewerage was all right; he was sure of that." On cross-examination she testified as follows : " He . . . guaranteed it [the furnace] was all right. I said, ' If it is, all right ; if it is not, I won't stay in the house ; and if your plumbing is not all right, I would n't stay here fifteen minutes after I could get out. I would n't bring my mother, my family, here if I was n't sure that the house was in good condition.'"

Mrs. Graves testified in chief as follows : " She [the plaintiff] said, ' I don't know how the plumbing is.' He says, ' I know it is all right, and you will find it so. Mrs. Clogston, you may depend upon what I say. I know it is all right.'" On cross-examination she testified that at a former trial she had testified that the plaintiff asked Smith how he knew the premises were in good repair, and that he said to the plaintiff, " I know and I can tell you how I know. This place was tested inside of a year ago. That is what he said." She further testified that at the former trial the plaintiff testified that she asked Smith why it was he knew, and that that was the answer he gave. Smith testified in substance that there was no such conversation, and that there was no mention of plumbing or drainage. The counsel for the defendant was allowed to read to the jury the following testimony from the stenographic report made by the court stenographer of the evidence at the former trial of the case. By this report it appeared that at that trial the plaintiff testified in her examination in chief as to the conversation between her and Smith thus: "' Are you sure the plumbing is right here and the sewerage?' ' Yes,' he says, ' I am.' ' Well, but how do you know it is?' He says, ' Because this house was tested less than a year ago by the Board of Health.' I said, ' You are sure of that?' He said, ' Yes.' ' Well, I want to be sure,' I said, ' because I have found that Boston houses are not very safe to live in, and I don't want to ruin my health.'" On cross-examination

at this former trial the report showed that the plaintiff testified thus: "He told me the plumbing was all right. . . . I said, 'Mr. Smith, I shall never sign that lease unless you will tell me that this plumbing is all right and the sewerage is right in this house.' . . . He replied that he knew it was all right, that the house had been tested less than a year ago by the Board of Health. He did not say what the Board of Health reported; he did not say anything about the result of their test that I can remember. . . . I took it for granted that if he knew it was all right I thought it must be." It further appeared from the stenographic report that at that trial Mrs. Graves said that Smith knew the plumbing was all right because it was tested inside of a year.

The testimony at the former trial was admissible only so far as inconsistent with the testimony at this last trial. Upon the testimony at this last trial we think that the jury would be warranted in finding that Smith was plainly informed by the plaintiff that she would not sign the lease until she was assured that the plumbing with its sewer connections was all right, and that Smith said to her, as a matter within his own personal knowledge, in direct and positive language, that it was all right; and that the plaintiff so understood him.

The jury may have concluded that, even if he spoke of the test which had been made the year before the conversation, his language, when taken in connection with the anxiety expressed by the plaintiff for accurate information about the plumbing and its sewer connections, fairly imported that his knowledge of their then present condition was not based entirely upon that test, but, in part at least, upon some other or more intimate knowledge of their construction and operation. We cannot say that the actual condition of the plumbing with its sewer connections, in a house like this, cannot be known so that within a reasonable and legal sense a representation of such condition may be made as of one's own personal knowledge.

The defendant's requests for instructions were rightly refused, and the instructions under which the case was submitted to the jury were full and correct.

*Exceptions overruled.*